UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALAN BOYD CURTIS,**

    Petitioner,

v.   Case No. 8:20-cv-2947-MSS-TGW

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    Respondent.
_____/

**O R D E R**

Curtis petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for sexual battery, robbery, and battery. (Doc. 1) The Respondent asserts that the amended petition is time barred. (Doc. 38) Curtis replies that either the petition is timely or that the limitation equitably tolled. (Doc. 44) After reviewing the pleadings and the relevant state court record, the Court construes the response (Doc. 38) as a motion to dismiss and **DENIES** the construed motion.

**PROCEDURAL HISTORY**

Curtis pleaded guilty to two counts of sexual battery, one count of robbery, and two counts of battery. (Doc. 39-2 at 6–7) At the change of plea hearing, the prosecutor summarized a factual basis for the plea (Doc. 39-2 at 26):

> [Prosecutor:]    [T]his began on Saturday, May, 29, 1999, at Apartment A, 5001 Star Fish Drive in the Cocina Arms Apartments in Saint Petersburg. At that time, the defendant was living at that location with [P.S.]
>
> An argument began over his contact with some female individual [ ] in a chat room

1

> over the internet. This argument escalated to the defendant punching her in the chest and face area and him leaving the residence.
>
> The next day, he came back and stole basically all of her underwear and some pictures of family members from the apartment. She then called the police and reported the incident.
>
> Then [at] five thirty, [or] six o'clock, the defendant came over to the house, kicked in the door, knocking the door chain out of the door, then told her that he was going to kill her and rape her, that he was going to go to jail.
>
> He ordered her to take her clothes off where he repeatedly forced his penis in her mouth against her will and then also inserted his finger and fists into her vaginal area against her will causing bruising and lacerations.
>
> During the course of this episode, he also ripped jewelry from her person where you could see ligature type marks where this was done, and he took that property from her without her permission.
>
> He also repeatedly punched and struck her about the face resulting in black eyes, swollen lips, and just general swelling about her facial area.

Before the change of plea, trial counsel informed the trial judge that P.S. recanted her accusation against Curtis (Doc. 39-2 at 11–12):

> [Trial court:]   Have there been any previous discussions on this case?
>
> [Trial counsel:]   Judge, this is somewhat of an unusual case. The victim in this case, who is present in the courtroom, has married the defendant

2

> pending the disposition of these charges at the county jail. They were engaged to be married previous to the allegation that gave rise to the charges here.
>
> She does not wish to see him prosecuted, and she has recanted her statement and would be willing to tell the Court under oath that the — essentially she fabricated the story of the sexual battery and robbery.
>
> She's willing to do that today. She's willing to suffer the penalties of false police report, perjury, whatever else may arise from that recant of her earlier testimony. So that's the posture we're in, Judge.

The prosecutor advised the trial judge that he was prepared to proceed to trial without P.S.'s testimony and summarized the evidence that he would present at trial. (Doc. 39-2 at 12–14)

On October 5, 1999, after Curtis pleaded guilty, the trial court sentenced Curtis to concurrent suspended sentences of twenty years in prison, followed by ten years of probation, for the sexual battery and robbery convictions, and time served for the battery convictions. (Doc. 39-2 at 39–51) ("original 1999 judgment") The trial court imposed the mitigated sentences because P.S. recanted her accusation. (Doc. 39-2 at 29–30) Curtis did not appeal.

Six years later, a probation officer filed an affidavit alleging that Curtis violated conditions of probation. (Doc. 39-2 at 60) Evidence at a probation violation hearing proved that Curtis withdrew $190,000.00 from his bank accounts and traveled without permission to France, after learning that a police officer wanted to interview him about a new allegation of sexual battery.[1] (Doc. 39-2 at 94, 104, 107, 109–20) The trial court revoked probation and

---

[1] An information charged Curtis with kidnapping and sexual battery based on the new allegation, a jury found Curtis guilty, and the trial judge sentenced him to life in prison. *State v. Curtis*, No. 05-CF-4078 (Fla. 6th Jud. Cir.). Because Spain extradited Curtis to Florida, and a treaty between the United States and Spain required Curtis to receive a sentence of a term

3

sentenced Curtis to two concurrent sentences of fifteen years in prison for the sexual battery convictions and a consecutive five years for the robbery conviction. (Doc. 39-2 at 139, 154–57) The trial court did not enter a written order revoking probation and instead erroneously entered a new judgment and sentence. (Doc. 39-2 at 152–57) ("erroneous 2007 judgment") *See Dawkins v. State*, 936 So. 2d 710, 712 (Fla. 2d DCA 2006). Curtis appealed, and the state appellate court dismissed the appeal because Curtis failed to pay the filing fee. (Doc. 39-2 at 164)

Between 2009 and 2015, Curtis engaged in extensive post-conviction litigation, and the post-conviction court denied relief. In 2015, the post-conviction court barred Curtis from filing a *pro se* motion or petition. (Doc. 39-3 at 742–44)

In 2018, Curtis filed a petition for a writ of mandamus requesting that the state appellate court compel the trial court to enter a written order revoking probation. (Doc. 39-3 at 2–37) The state appellate court granted the petition and directed the trial court to enter a written order. (Doc. 39-4 at 409) On December 18, 2018, the trial court entered the written order, *nunc pro tunc* to August 10, 2007, the date of the revocation hearing. (Doc. 39-4 at 411–12) ("2018 revocation order") Curtis appealed the order revoking probation (Doc. 39-4 at 471), and the state appellate court affirmed. (Doc. 39-4 at 519) ("2020 revocation affirmance") Curtis filed a petition alleging ineffective assistance of appellate counsel (Doc. 39-4 at 523–68), and, on December 15, 2020, the state appellate court denied relief. (Doc. 39-4 at 781) Curtis's federal petition followed.

---

of years, the trial judge resentenced him to an aggregate eighty-year sentence. Judgment, *Curtis*, No. 05-CF-4078 (Fla. 6th Jud. Cir. Feb. 12, 2010). Curtis filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging these convictions and sentences. *Curtis v. Sec'y, Dep't Corrs.*, No. 8:21-cv-486-CEH-AAS (M.D. Fla.).

In his federal petition, Curtis asserts the following claims: (1) the trial court violated his federal rights by revoking his probation for violating a condition not listed in the statute governing the standard conditions of probation and not orally pronounced at sentencing, (2) the trial court violated his federal rights by untimely entering the order of probation, (3) the trial court violated his right against double jeopardy by imposing additional conditions of probation after accepting his change of plea, (4) the prosecutor violated his federal rights by breaching the plea agreement, (5) the trial court violated his federal rights by imposing additional conditions of probation without notice and the assistance of counsel, (6) the trial court violated his federal rights because a successor judge who did not preside over his revocation hearing entered the written order revoking probation, (7) the trial court violated his rights under the treaty between the United States and Spain by extraditing him for an offense not authorized by the treaty, (8) the prosecutor violated his rights under the treaty by fraudulently obtaining authorization for his extradition, and (9) appellate counsel deficiently performed by not raising the above claims on direct appeal. (Doc. 1 at 21–44)

## ANALYSIS

A one-year statute of limitation applies to a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On October 5, 1999, the trial court entered the original 1999 judgment, after Curtis pleaded guilty. (Doc. 39-2 at 39–51) Curtis did not appeal, and the time to appeal expired thirty days later — November 5, 1999. Fla. R. App. P. 9.140(b)(3). The limitation started to

run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Murphy v. United States*, 634 F.3d 1303, 1307 (11th Cir. 2011).

Curtis asserts that the limitation reset on October 26, 2020, when mandate entered after the 2020 revocation affirmance. (Docs. 33 at 15–16, 44 at 8, 39-4 at 521) The Respondent asserts that the limitation did not reset because the trial court entered a new sentence after determining that Curtis violated a condition of his probation, and Curtis's federal petition raises claims that challenge only the original 1999 conviction. (Doc. 38 at 19–21) The Respondent further asserts that, even if the limitation reset after the revocation proceedings, the limitation restarted on March 25, 2008, when the state appellate court dismissed Curtis's revocation appeal for failing to pay the filing fee. (Docs. 38 at 25–28 and 39-2 at 164)

Under Section 2244(d), the limitation "begins to run when the judgment pursuant to which the petitioner is in custody, which is based on both the conviction and the sentence the petitioner is serving, is final." *Ferreira v. Sec'y, Dep't Corrs.*, 494 F.3d 1286, 1293 (11th Cir. 2007). After determining that Curtis violated a condition of his probation, the trial court revoked probation and imposed an aggregate twenty-year prison sentence. (Doc. 39-2 at 154–57) The new twenty-year sentence currently imprisons Curtis. Consequently, the limitation reset when the order revoking probation and the twenty-year sentence became final. *Ferreira*, 494 F.3d 1286, 1293 ("AEDPA's statute of limitations begins to run from the date both the conviction *and* the sentence the petitioner is serving at the time he files his application become final because judgment is based on both the conviction and the sentence.") (italics in original).

The order revoking probation and twenty-year sentence became final when Curtis's appeal of the revocation proceedings concluded. 28 U.S.C. § 2244(d)(1)(A) ("The limitation

6

period shall run from the latest of — the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ."). Under Florida law, a defendant is entitled to appeal an order revoking probation. § 924.06(1)(c), Fla. Stat.; Fla. R. App. P. 9.140(b)(1)(D). The trial court must enter a written order. *Donley v. State*, 557 So. 2d 943, 945 (Fla. 2d DCA 1990) ("When a court finds that a probationer has violated his probation, it must enter a formal order setting forth the conditions that it finds were violated.").

*Dawkins v. State*, 936 So. 2d 710, 712 (Fla. 2d DCA 2006) (footnote omitted), explains that a defendant must appeal the written order revoking probation:

> We candidly are not aware of any rule or statute that expressly permits a circuit court to enter multiple judgments of conviction for the same offense in one case. An order revoking probation [ ] is expressly appealable under section 924.06(1)(c), Florida Statutes (2005). Without such an order in the record, at least in the absence of a transcript of the violation hearing, a criminal court file contains no document demonstrating the legal authority of the trial court to impose a new sentence.
>
> Technically, an order revoking probation is not appealable until it is rendered. When a judge renders such an order, he or she is required to inform the defendant concerning the right of appeal. *See* Fla. R. Crim. P. 3.670. By failing to enter an order of revocation, the trial court is leaving a case in limbo. . . .

Under Florida law, an order becomes appealable when rendered, and an order is rendered "when a signed, written order is filed with the clerk of the lower tribunal." Fla. R. App. P. 9.020(h). Even if the trial court entered the order *nunc pro tunc* to an earlier date, the order did not become appealable until the trial judge prepared the written order and signed and filed the written order with the state court clerk. After the 2018 revocation order was "rendered," Curtis timely filed a notice of appeal (Doc. 39-4 at 471), and a judgment based on the original 1999 judgment, the 2018 revocation order, and the twenty-year sentence

7

became final under Section 2244(d)(1)(A) when the revocation appeal concluded. *See, e.g.*, *Jimenez v. Quarterman*, 555 U.S. 113, 121 (2009) ("We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A).").

The Respondent cites *Osbourne v. Sec'y, Fla. Dep't Corrs.*, 968 F.3d 1261 (11th Cir. 2020), to argue that Curtis's appeal of the 2018 revocation order was untimely because the trial court entered the 2018 revocation order, *nunc pro tunc* to the date of the revocation hearing. (Doc. 38 at 26–27) In *Osbourne*, 968 F.3d at 1263, a post-conviction court granted relief and amended the petitioner's sentence for robbery by removing a ten-year mandatory minimum term. The post-conviction court entered the amended sentence, *nunc pro tunc* to the date of the petitioner's original sentence. *Osbourne*, 968 F.3d at 1263. The court of appeals held that the amended sentence entered *nunc pro tunc* to the date of the original judgment was not a new judgment that authorized a successive petition. *Osbourne*, 968 F.3d at 1263. In this case, the trial court did not enter an amended order revoking probation, *nunc pro tunc* to the date of an initial order. The trial court had not entered any order revoking probation and instead entered the erroneous 2007 judgment. (Doc. 39-2 at 152–57) As explained above, Curtis could not appeal the order revoking probation until the trial judge wrote, signed, and filed the order. Consequently, Curtis's appeal of the 2018 revocation order was not untimely.

The Respondent cites *Bennett v. Fortner*, 863 F.2d 804 (11th Cir. 1989), to further argue that this Court must presume that the state appellate court dismissed the revocation appeal as untimely because the State argued in its brief on appeal that the appeal was untimely, and the state appellate court affirmed in a decision without a written opinion. (Doc. 38 at 27–28)

8

However, the presumption in *Bennett* applies when evaluating under Section 2254(d) whether a state court either adjudicated a claim on the merits or dismissed the claim on a state procedural ground. The presumption does not apply when evaluating the limitation under Section 2244(d).

Even if the presumption applies, Curtis convincingly rebuts the presumption. The state appellate court granted Curtis's petition for a writ of mandamus as follows (Doc. 39-4 at 409) (bolding added):

> In his petition for writ of mandamus, petitioner seeks to compel the circuit court to render a written order of revocation of probation after it failed to do so following an August 10, 2007, hearing in which it revoked petitioner's probation and imposed new sentences. We grant the petition and order the circuit court to render such an order. *See Espinoza-Brito v. State*, 246 So. 3d 522 (Fla. 2d DCA 2018); *Dawkins v. State*, 936 So. 2d 710, 712 (Fla. 2d DCA 2006); *Greer v. State*, 831 So. 2d 1261 (Fla. 2d DCA 2002); **State v. Sullivan, 640 So. 2d 77, 78 (Fla. 2d DCA 1994) ("If a trial court fails or refuses to enter a written order that is needed for an appeal, counsel has the remedy of filing a motion or a petition for writ of mandamus with this court to compel the trial court to enter such an order.").** Because we are confident that the circuit court will promptly comply with the ruling of this court, we withhold formal issuance of the writ. Within twenty days of this order, the State of Florida shall file in this court a copy of the circuit court's written order of revocation of probation.

The state appellate court cited and quoted *Sullivan* to explain that the purpose of granting the mandamus petition was to provide Curtis a written order that he could appeal.

On appeal, the state appellate court granted Curtis's motion to relinquish jurisdiction to reconstruct the record. (Doc. 39-4 at 475) In the motion, Curtis advised that he appealed the 2018 revocation order that arose from an evidentiary hearing that occurred in 2007. (Doc. 39-4 at 481) The state appellate court did not direct the parties to address the timeliness of the appeal, and the State did not move to dismiss the appeal as untimely. A state appellate court

9

lacks jurisdiction over an appeal initiated by an untimely notice. *Peltz v. Dist. Ct. of Appeal, Third Dist.*, 605 So. 2d 865, 866 (Fla. 1992) ("The untimely filing of a notice of appeal precludes the appellate court from exercising jurisdiction.").

In his appellate brief, Curtis argued that the trial court abused its discretion by denying his motion to continue the revocation hearing. (Doc. 39-4 at 493–94) The State argued that the appeal was untimely but also addressed the merits of Curtis's appeal. (Doc. 39-4 at 507–11) The state appellate court did not dismiss the appeal as untimely and instead affirmed the 2018 revocation order in a decision without a written opinion. (Doc. 39-4 at 519) Because the state appellate court directed the trial court to enter a written order that Curtis could appeal, the parties briefed the merits of the appeal, and the state appellate court did not dismiss the appeal as untimely, this Court does not presume that the state appellate court dismissed the appeal as untimely.

Lastly, the Respondent asserts that the limitation did not reset because Curtis's federal petition raises claims that challenge only the original 1999 conviction. (Doc. 38 at 19–21) In his federal petition, Curtis raises claims that challenge both the revocation proceedings and the 1999 original judgment. (Doc. 1 at 21–44) Also, a petitioner may challenge an underlying conviction on federal habeas, even if a new judgment that resets the limitation period arises from only a new sentence. *Cox v. Sec'y, Fla. Dep't Corrs.*, 837 F.3d 1114, 1116–17 (11th Cir. 2016) ("[I]n *Insignares v. Secretary, Florida Department of Corrections*, 755 F.3d 1273 (11th Cir. 2014), we answered a question left open by *Magwood* by holding that a petitioner may challenge his or her undisturbed conviction after the state imposed only a new sentence.") (citing *Magwood v. Patterson*, 561 U.S. 320 (2010)).

On September 16, 2020, the state appellate court affirmed the 2018 revocation order in a decision without a written opinion. (Doc. 39-4 at 519) Because the state supreme court lacked jurisdiction to review the 2020 revocation affirmance, Curtis could have sought further review only in the United States Supreme Court. *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020); *Jenkins v. State*, 385 So. 2d 1356, 1359 (Fla. 1980). Curtis did not seek further review, and the time to seek further review expired ninety days after the 2020 revocation affirmance — December 16, 2020. Sup. Ct. R. 13.1(1). The limitation began to run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).

On December 4, 2020, Curtis placed in the hands of prison officials for mailing his federal petition. (Doc. 1 at 44) Consequently, he timely filed his federal petition.

Accordingly, the Respondent's construed motion (Doc. 38) to dismiss is **DENIED**. No later than **60 DAYS** from the date of this Order, the Respondent must submit a brief addressing the merits of Curtis's claims and submit a supplemental appendix with any additional relevant documents from the state court record. No later than **30 DAYS** after the Respondent files a response, Curtis may file a reply. The reply must not exceed twenty pages. The Clerk is **DIRECTED** to **STAY** and **ADMINISTRATIVELY CLOSE** this case until the parties submit the supplemental briefs.

**DONE AND ORDERED** in Tampa, Florida on January 25, 2024.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE